OPINION OF THE COURT
Denis R. Hurley, J.
The captioned matter involves a bitter and protracted dispute between a mother and father over the custody of their two infant children. During the father’s direct examination, he was asked by his counsel to relay to the court a conversation that he had with his four-year-old son. Counsel’s offer of proof indicated that the conversation consisted of a series of derogatory remarks that the mother’s male associate had reportedly made to the boy about his father.
The proponent of the question argued that hearsay evidence *469 is admissible in a custody proceeding, citing the Court of Appeals decision of People ex rel. Cusano v Leone (43 NY2d 665 [1977]) in support of his contention. The objector questioned the relevance of People ex rel. Cusano v Leone, contending that the traditional rules of evidence in a civil trial call for the exclusion of hearsay, and there is no reason to alter that rule in custody disputes.
The objection was sustained. However, due to the importance of the question, and the dearth of written authority on point which will be discussed momentarily, I indicated that a written opinion would follow. The purpose of the present decision is to provide that opinion, and to set forth the rationale underlying my trial ruling that the aforementioned question asked of the father by his counsel — which called for a hearsay response — was objectionable.
QUESTION PRESENTED
Is hearsay admissible upon the trial of a child custody dispute? Surprisingly, this question which surely arises on a daily basis in courts throughout the State, has never been the subject of a written judicial analysis within our jurisdiction, save for a brief, less than illuminating footnote in the 1977 Court of Appeals decision in People ex rel. Cusano v Leone (supra). Moreover, the Legislature has not answered the question by the enactment of a controlling evidentiary statute.
DISCUSSION
Reliance by counsel for the father upon People ex. rel. Cusano v Leone (supra) is not novel. There are many occasions when, during a contested custody trial, counsel for both sides appear to informally agree that hearsay is admissible, particularly when the out-of-court declarant is the child whose custody is in dispute. Sometimes there is a vague reference to "that Court of Appeals case”; sometimes People ex rel. Cusano v Leone is specifically mentioned. Moreover, the Court of Appeals has indicated in Kesseler v Kesseler (10 NY2d 445 [1962]) and Matter of Lincoln v Lincoln (24 NY2d 270 [1969]) that the traditional requirements of the adversarial system may be relaxed in certain instances in child custody cases. Thus, at least in my experience, objections to trial questions which call for blatant hearsay responses often are not made.
In the instant proceedings, however, the objection was raised, and the issue appropriately framed for discussion.
*470 ANALYSIS OF PEOPLE EX REL. CUSANO v LEONE
Let us begin the present discussion with a review of People ex rel. Cusano v Leone (supra) and its footnote which is so often cited for the proposition that hearsay is admissible in custody cases.
The Cusano action was commenced via a habeas corpus writ brought by the mother against the paternal grandfather of her two children. The children had resided with their grandfather due to the death of their father and the in-patient hospitalization of the petitioner mother for psychiatric problems. Upon the mother’s release from the hospital, she took up residence with her mother and brought on the writ for the return of her children.
The trial court awarded custody to the maternal grandmother, cognizant of the fact that this would maintain contact between the mother and children while not burdening the emotionally troubled parent with the full responsibilities of caring for two youngsters.
The Appellate Division reversed, thereby leaving custody with the paternal grandfather. However, a few days before the Appellate Division issued its decision, the grandmother, mother and two children left for parts unknown. The absent adults apparently had authorized their attorney to pursue the appeal, although counsel was unable or unwilling to divulge their location during the oral argument in the Court of Appeals.
The Court of Appeals concluded that the record was insufficient to determine with whom the children should reside. The deficiency was found both at the trial level, and in the terse memorandum of the Appellate Division. Accordingly, the Appellate Division order was reversed, and the case remanded for a "new hearing” on the condition that the children be returned to the jurisdiction. Failing the occurrence of that condition, the appeal would be dismissed thereby leaving custody with the paternal grandfather.
The unusual and convoluted fact pattern in Cusano (supra) would be of no particular interest to Bench and Bar except that it represents the context for footnote 2 of the decision. That footnote, which refers to the "new hearing” to be held in the Supreme Court upon remand, reads as follows: "It should be noted that in the dispositional hearing, as opposed to the fitness hearing, hearsay testimony may be considered as long as it is material and relevant and its use would not be a *471 breach of traditional notions of fairness (see Family Ct Act, § 1046; Matter of Blaine, 54 Misc 2d 248). That the present proceeding is in Special Term rather than Family Court would not seem to warrant disregard for the special evidentiary rules the Legislature has created for custody proceedings” (43 NY2d, supra, at 668, n 2).
Initially, it should be noted that the statements in the footnote are dictum, unnecessary to the resolution of the issues that were before the Court of Appeals. Nonetheless, the court indicated in footnote 2 that there are, or should be, two parts to custody trials, at least in a Matter of Bennett v Jeffreys* situation which matches nonparent against parent, viz., a "fitness” phase and a "dispositional” phase. At the latter hearing, hearsay — via the dictum in Cusano (supra) — is supposedly admissible. However, the current validity of that proposition is highly suspect for the following reasons:
1. court’s reference to family court act § 1046. Section 1046 sets forth statutorily created evidentiary rules which pertain to child abuse and neglect cases commenced pursuant to article 10 of the Family Court Act. That article specifically provides for a "fact-finding hearing” to determine if a child has been neglected or abused (Family Ct Act § 1045), to be followed by a "dispositional hearing” at which time the court selects among various alternatives to, inter alla, protect the child from further harm including the option of placing him or her in foster care (Family Ct Act § 1045), assuming that abuse or neglect was established at fact finding. Subdivision (c) of section 1046 indicates that hearsay is admissible in all article 10 proceedings with the exception of fact finding. However, there is nothing in the language of article 10 of the Family Court Act, or its history, to even remotely suggest that its bifurcated trial provisions, and concomitant special evidentiary rules are applicable to custody proceedings.
Granted, a Matter of Bennett v Jeffreys situation, such as existed in Cusano (supra), involves two separate questions which typically are addressed serially in a bifurcated trial. However, the two tiers of such proceedings are not analogous to those in article 10. Rather, as explained by the Court of Appeals in Matter of Bennett v Jeffreys (40 NY2d 543, 549): "[[Intervention by the State in the right and responsibility of a natural parent to custody of her or his child is warranted if there is first a judicial finding of surrender, abandonment, *472 unfitness, persistent neglect, unfortunate or involuntary extended disruption of custody, or other equivalent but rare extraordinary circumstance which would drastically affect the welfare of the child. It is only on such a premise that the courts may then proceed to inquire into the best interest of the child and to order a custodial disposition on that ground”.
Thus, we see that a nonparent seeking custody from a parent must first establish unfitness or other extraordinary circumstances. If that substantial hurdle is cleared, then both litigants are deemed to be "on equal footing” and a standard custody hearing will be held employing the now axiomatic "best interest” criterion. (See also, Matter of Infant L., 61 NY2d 420 [1984]; Matter of Nadia Kay R., 125 AD2d 674 [2d Dept].)
Why should hearsay be inadmissible at a Matter of Bennett v Jeffreys (supra) fitness hearing, yet admissible at the custody hearing itself as footnote 2 seems to suggest? That conclusion certainly is not supported by reference to Family Court Act article 10. Neglect and abuse necessarily entail two stages. The situation is otherwise with respect to a standard custody dispute or the second part of a Matter of Bennett v Jeffreys scenario, both of which address but one question, viz., which custodial arrangement is most consistent with the best interest of the child.
In sum, the provisions of Family Court Act article 10 apparently have not been applied to custody trials notwithstanding the citing of section 1046 in footnote 2; a review of that section and the article of which it is a part, and the history of the article, indicates that it should not be.
2. COURT’S REFERENCE TO MATTER OF BLAINE (54 MISC 2D 248 [FAM CT, QUEENS COUNTY 1967]).
Blaine involved a dispositional hearing pursuant to article 10, following an adjudication at fact finding that the parents neglected their children. The dispositional alternatives that were available to the Judge, as set forth in Family Court Act § 1052, included: suspended judgment, release of the child to his parents, placement of the child in foster care, an order of protection, and supervision of the respondent. In reviewing those alternatives, the court noted that "a neglect disposition bears far greater resemblance to a child-custody proceeding than to criminal sentencing” (Matter of Blaine, supra, at 255). Few would quarrel with that proposition. The purpose of a dispositional hearing is to fashion an order which will protect *473 the child, and address the problems in the home. Its purpose is not to punish the delinquent parent. However, it does not follow from those maxims that the specific evidentiary rules adopted by the Legislature for article 10 proceedings apply to custody actions, whether in the Family Court under article 6, or in the Supreme Court under sections 70 and 240 of the Domestic Relations Law.
3. court’s comments about special evidentiary rules in CUSTODY DISPUTES.
The last line of footnote 2 reads: "That the present proceeding is in Special Term rather than Family Court would not seem to warrant disregard for the special evidentiary rules the Legislature has created for custody proceedings” (43 NY2d, supra, at 668, n 2).
Presumably the claimed "special evidentiary rules” pertain to the admissibility of hearsay. Yet, a perusal of the Family Court Act, including article 6 which pertains to custody, indicates that the Legislature has not addressed the subject. Simply stated, there are no special evidentiary rules in the Family Court Act, or elsewhere for that matter, on the admissibility of hearsay in custody disputes.
For the reasons stated above, I do not find that People ex rel. Cusano v Leone (supra) is precedent for the proposition that hearsay is admissible in a child custody proceeding.
DISCUSSION OF KESSELER v KESSELER AND MATTER OF LINCOLN v LINCOLN
Outside of the Court of Appeals remarks in People ex rel. Cusano v Leone (supra) there appears to be no reported New York decision that discusses the issue of hearsay in a custody proceeding. However, in Kesseler v Kesseler (10 NY2d 445 [1962], supra) and Matter of Lincoln v Lincoln (24 NY2d 270 [1969], supra), the Court of Appeals articulated what might be considered as a general philosophy applicable to evidentiary questions in custody matters.
In Kesseler (supra), the Court of Appeals, when faced with the question of the use of forensic reports in a custody trial, indicated that a departure from strict adversary concepts is often justified.
Seven years after Kesseler (supra), the Court of Appeals stated in Matter of Lincoln v Lincoln (supra, at 272): "The procedures of the custody proceeding must, therefore, be molded to serve its primary purpose, and limited modifications *474 of the traditional requirements of the adversary system must be made, if necessary.” Lincoln involved the issue of an in camera interview by the court with the subject child, albeit without the right of confrontation. In permitting a trial court to consider the results of such an interview, the Court of Appeals may well have "relaxed” the time honored notions of the adversarial system, but it stopped well short of discarding the traditional civil rules of evidence, including the prohibition of hearsay.
In sum, Kesseler v Kesseler (supra) and Matter of Lincoln v Lincoln (supra) do not indicate that hearsay may be admitted in a child custody proceeding, and any reliance on those decisions for that proposition is misplaced.
EXPERIENCE IN SISTER STATES
Unlike New York, the question of the admissibility of hearsay in a child custody proceeding has received considerable attention in our sister States. A comparison of these other jurisdictions reveals that almost uniformly, hearsay is not admissible in a custody proceeding. (See, e.g., Coble v Coble, 323 Pa Super 445, 470 A2d 1002 [1984]; Denningham v Denningham, 49 Md App 328, 431 A2d 755 [1981]; Perkins v Perkins, 227 Ga 177, 179 SE2d 518 [1971]; Malone v Malone, 591 P2d 296 [Okla Sup Ct 1979]; Scott v Scott, 6 Fam L Rep [BNA] 2643, 415 A2d 812 [DC App 1980]; Matter of Swan, 173 Mont 311, 567 P2d 898 [1977]; Fuhrman v Fuhrman, 254 NW2d 97 [ND Sup Ct 1977]; Matter of Shue, 311 NC 586, 319 SE2d 567 [1984].) Indeed, the prevailing philosophy in those jurisdictions was summarized by the Oklahoma Supreme Court in Malone v Malone (supra, at 297) wherein the court stated: "The overwhelming majority of the States have held either expressly or by necessary implication that an order or decree awarding or modifying custody must be based on evidence heard in open court in, observance of the requirements of due process”.
In those States where hearsay is admissible in a custody dispute, it is accomplished typically by statute. (See, e.g, Sabol v Sabol, 2 Haw App 24, 624 P2d 1378 [1981].) As mentioned previously, however, New York has not enacted such legislation notwithstanding the dictum in footnote 2 of People ex rel. Cusano v Leone (supra) suggesting that it has.
CONCLUSION
With little or no precedent in this State, and with the *475 overwhelming position espoused by sister States being against the admission of hearsay in custody matters, I believe that the settled rules of evidence relative to the competency of testimony should be applied in the present case. Those rules mandate that unless there is a specific exception, by decision or statute, hearsay evidence is inadmissible. However, the above result is not premised solely upon the absence of New York precedent and the weight of sister State decisions. It is also based on the historic policy that judicial determinations should rest on a record of sound, competent evidence. Absent legislation or an explicit direction from an appellate court I see no reason to adjust that policy by admitting hearsay simply because the dispute involves the custody of a child, which must be considered as one of the most important types of cases that Judges are called upon to decide. As noted by the Court of Appeals in Fleury v Edwards (14 NY2d 334, 341 [1968]) the rules of evidence are "fashioned to further, not frustrate, the truth-finding function of the courts in civil cases” (emphasis supplied). See also, the general explanation for the exclusion of hearsay in 5 Wigmore, Evidence § 1362 (Chadbourn rev 1974) ("The many possible deficiencies, suppressions, sources of error and untrustworthiness which lie underneath the bare untested assertion of a witness may best be brought to light and exposed by the test of cross examination”) and the cogent, although caustic specific objections voiced by one matrimonial practitioner to what she labels as the "anything goes rule” often adopted with respect to evidentiary questions in custody matters (Ange, Custody: Rules of Evidence Need Not Apply?, 18 Fam L Rev 7).
For the reasons stated above, the objection to the introduction of testimonial hearsay evidence in this custody proceeding was sustained.

 40 NY2d 543 (1976).